IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KORISSA HANSFORD,

           Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

           Defendant.

OPINION AND ORDER

18-cv-607-slc

---

In March 2015, plaintiff Korissa Hansford filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, respectively, alleging that she had been disabled since June 15, 2014 because of a back injury, arthritis in her back and depression. The state disability agency denied her applications initially and on reconsideration. Hansford requested a hearing before an administrative law judge ("ALJ"), who held a hearing on May 24, 2017 at which Hanford testified and was represented by counsel. On July 19, 2017, the ALJ issued a decision finding that Hansford was not disabled under the Commissioner's five-step framework for evaluating disability claims. *See* 20 C.F.R. §§ 404.15290, 416.920. That decision became the final decision of the Commissioner when the Appeals Council declined Hansford's petition for review.

Hansford now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).[1] She argues that the ALJ erred BY failing to include her "mild" limitations in understanding, remembering, or applying information and interacting with others when he

---

[1] This court has amended the caption to reflect that Andrew Saul was recently confirmed as the Commissioner of Social Security.

determined Hansford's RFC. For the reasons stated below, I am rejecting this argument and affirming the decision of the Commissioner.

BACKGROUND

Hansford was born on August 26, 1992, making her 21 years old on her alleged onset date and 24 on the date of the ALJ's decision. She has a high school education and past relevant work in sales, as an assembler and as a fast food worker. She alleged that she is unable to work due to a back injury with arthritis in her back that causes pain, requiring periods of lying down and breaks throughout the day that prevent her from performing full time work. She also alleged that because of depression, she sometimes cries for no reason. At the time of the hearing, she was living in a duplex with her two children, ages four and six.

In assessing Hansford's claim, the ALJ found that she had a medically-determinable spinal disorder and an affective disorder, but that only the spinal disorder was "severe" under the Commissioner's framework. 20 C.F.R. §§ 404.1520(c) and 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). With regard to the affective disorder, the ALJ found from his review of the evidence that it posed only "mild" limitations in two of the four broad functional areas[2] the agency uses to evaluate whether a mental impairment is severe enough to be presumed disabling. Administrative Record ("AR") 21-22.

---

[2]These functional areas are often referred to as the "paragraph B" criteria, in reference to the Listings for Mental Impairments found at 12.01, Pt. 404, Subpt. P, App. 1.

Specifically, the ALJ found that Hansford has mild limitations in (1) understanding, remembering, or applying information, and (2) interacting with others. Accordingly, the ALJ found that Hansford's affective disorder was not a "severe" impairment as that term is defined in the agency's regulations. AR 21-22. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."); 20 C.F.R. § 416.920a(d)(1) (same). In addition, the ALJ specifically found that Hansford's mental disorder "did not cause more than minimal limitations in Ms. Hansford's ability to perform basic work activities." AR 21.

Because the ALJ determined that Hansford's spinal disorder qualified as a severe impairment, he proceeded to the next steps in the evaluation process, which included an assessment of Hansford's residual functional capacity ("RFC"). The ALJ's RFC assessment included a number of limitations to account for Hansford's back pain, but did not include any limitations related to her mental impairment. Testifying in response to a hypothetical question based on this RFC, a vocational expert at the hearing had testified that although Hansford would be unable to perform any of her past relevant work, she could perform numerous unskilled jobs existing in significant jobs in the national economy, such as order clerk. Based on this testimony, at the fifth and final step of the sequential evaluation the ALJ found plaintiff not disabled.

OPINION

The sole ground for Hansford's appeal is the ALJ's failure to include in his RFC assessment restrictions related to Hansford's non-severe mental impairment. Hansford cites to the Commissioner's regulations and to case law stating that when determining a claimant's RFC, the

3

ALJ must consider the limiting effects of *all* of a claimant's impairments, even those impairments that are not severe. 20 C.F.R. §§ 404.1545(e), 416.945(e); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("We have frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."). According to Hansford, this means that once the ALJ found mild mental limitations during the threshold inquiry at steps two and three–the propriety of which Hansford does not challenge–he was required to explicitly include those mild mental limitations in the RFC.

I disagree. The regulations and case law say that the ALJ must *consider* the limitations posed by the claimant's severe and non-severe impairments. They do not say that the ALJ must always *include* non-severe limitations in the RFC. Thus, where the ALJ builds a logical bridge between the evidence and his decision to omit non-exertional mental limitations from the ultimate RFC finding, remand is not required. *E.g., Lewis v. Acting Comm. of Social Security*, No. 17-cv-4172, 2018 WL 4469873 5262083, *3-4 (C.D. Ill. Sept. 18, 2018) (remand not required where ALJ explicitly stated that the mild mental limitations found in the consideration of the paragraph "B" criteria of the mental disorder listings did "not warrant any non-exertional mental limitations" and discussed the relevant evidence in her decision); *Suzanne M. v. Commissioner of Social Security*, No. 17-cv-1425, 2018 WL 6817029 *6 (C.D. Ill. Nov. 9, 2018) (ALJ adequately accounted for plaintiff's non-severe, mild mental limitations in RFC where such limitations were attributable to her physical symptoms and not her mental health); *Keys v. Colvin*, No. 1:14-CV-250, 2016 WL 447519, at *8 (N.D. Ind. Feb. 5, 2016), *aff'd sub nom. Keys v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017) (although ALJ found mild limitations in concentration, persistence, and pace and social functioning at step two, remand not required where ALJ

4

indicated that her step two finding was not a RFC assessment, gave great weight to opinions of the State agency psychological consultants that plaintiff did not have any severe mental impairments, and noted that plaintiff did not receive any treatment for mental impairments).

For decisions going the other way, *see McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *5-6 (N.D. Ill. Mar. 20, 2019) (ALJ's failure to discuss and incorporate a mild limitation in CPP into "his RFC analysis and to determine what impact it had on [the claimant's] ability to perform her previous relevant work is grounds for remand"); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *3-5 (N.D. Ill. March 11, 2019) (ALJ's failure to address the claimant's mild mental limitations in the RFC assessment or corresponding explanation required remand); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (ALJ's failure to factor mild limitations in activities of daily living, social functioning, and CPP into RFC required remand).

Here, the ALJ sufficiently connected his decision to the evidence. First, the ALJ acknowledged that in determining Hansford's RFC, he was required to consider all of her impairments, even those deemed non-severe. AR 20. Second, at step two, he specifically found that Hansford's mental impairment "did not cause more than minimal limitations in [her] ability to perform basic mental work activities." AR 21. Reviewing the evidence, the ALJ noted, among other things, that Hansford was not receiving any mental health treatment other than medication from her primary care provider, her mental status evaluation by a consultative examiner was unremarkable except for a mildly depressed affect, and that she had acknowledged being able to pay attention for an hour and having few problems following both written and spoken instructions. AR 22. The ALJ also cited the evaluations by the state agency consulting

5

psychologists, who concluded that Hansford had only mild limitations in activities of daily living and social functioning. *Id*.

Third, after evaluating the evidence and explaining why he found that Hansford's mental impairment caused no more than "mild" limitations in the four functional areas at step three, he wrote:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph "B" of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

AR 22-23. Thus, the ALJ recognized that he needed to consider Hansford's RFC separately from the issue of whether her mental impairment was severe.

Fourth, the ALJ noted during his RFC discussion that during Hansford's alleged period of disability, she had been attending a technical college part time where she was studying early childhood education, and she had reported that she had kept up with her school work. AR 24. Although the ALJ didn't come out and say it, the import of this evidence is that Hansford was able to maintain concentration, attention and pace well enough to take college classes and to handle being around others. Finally, the ALJ stated that he had based his RFC on the opinions of the state disability agency consultants, who had limited Hansford to a range of light work "without a severe mental health impairment." AR 25. The ALJ explained that he had accepted these opinions because they were "consistent with the record as a whole," noting that there were

6

no opinions from treating or examining physicians who found that Hansford was disabled or had greater limitations than expressed in the RFC. *Id*.

Importantly, Hansford raises no challenge to the ALJ's evaluation of the evidence or the weight he gave to the state agency consultants' opinions. Reading the ALJ's opinion in its totality, it is plain that he did not "ignore" Hansford's mental impairment when he assessed her RFC. To the contrary, he acknowledged that the RFC assessment was different from the severity assessment at step two, and he expressly noted that he had relied in formulating his RFC on the opinions of the state agency consultants, neither of whom identified any work restrictions related to Hansford's affective disorder. Although the ALJ could have explained his reasoning more thoroughly, he said enough to demonstrate that he complied with his duty to consider whether Hansford had any limitations from her non-severe mental impairment that should have been accounted for in the RFC.

Finally, it is Hansford's burden to produce evidence showing how her impairments affect her ability to work. Hansford does not explain how the ALJ's RFC finding is incompatible with her depressive disorder, nor does she point to evidence in the record supporting additional limitations. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (explaining that a diagnosed medical condition does not necessarily establish decreased capacity to work). Her sole argument is that, because the ALJ noted that she reported "few problems" following both written and spoken instruction, she must have had *some* problems in that area. Br. in Supp., dkt. 10, at 10. But a review of the evidence cited by the ALJ shows that he was being overly generous; when Hansford was asked on a function report how well she followed written and spoken instructions, she wrote "good, *no problems*." AR 255 (emphasis added). Further, Hansford did not identify any specific mental limitations when she testified at the administrative hearing, where she was

7

represented by counsel. Given Hansford's inability to point to any evidence in the record showing that her depression *actually* gives rise to limitations that affect her mental ability to perform unskilled work, she is not entitled to a remand. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (a claimant is not entitled to a remand if she does not "identify medical evidence that would justify further restrictions").

ORDER

IT IS ORDERED that the decision of the Commissioner of Social Security denying Korissa Hansford's applications for Disability Insurance Benefits and Supplemental Security Income is AFFIRMED.

Entered this 27th day of September, 2019.

BY THE COURT:

/s/

_____

STEPHEN L. CROCKER
Magistrate Judge